The People of the State of New York, Respondent, *v.* County of Westchester et al., Appellants.

Argued January 15, 1940; decided March 5, 1940.

*William A. Davidson, County Attorney (John Lord O'Brian, Thomas M. Smith, Francis J. Morgan, Frank J. Claydon* and *William I. Morey* of counsel), for appellants. The

Hutchinson River Parkway is a park and not an ordinary public highway or driveway. (*Matter of County of Westchester* [*Hutchinson River Parkway*], 246 N. Y. 314; *Westchester Electric R. R. Co.* v. *Westchester County Park Comm.*, 255 N. Y. 297.) The definition of public highway contained in the Vehicle and Traffic Law (Cons. Laws, ch. 71, § 2) has no application to the Hutchinson River Parkway. (*Matter of County of Westchester* [*Hutchinson River Parkway*], 246 N. Y. 314; *Sebring* v. *Quackenbush*, 120 Misc. Rep. 609; 214 App. Div. 758; *Matter of Central Parkway*, 140 Misc. Rep. 727; *Brooklyn Park Comm.* v. *Armstrong*, 45 N. Y. 234.) Local Law No. 5 was adopted by the county pursuant to the home rule provisions of the State Constitution. (*Matter of Mooney* v. *Cohen*, 272 N. Y. 33; *Adler* v. *Deegan*, 251 N. Y. 467; *People ex rel. Wakeley* v. *McIntyre*, 154 N. Y. 628; *Cleveland* v. *City of Watertown*, 222 N. Y. 159; *People* v. *Ringe*, 197 N. Y. 143; *Gautier* v. *Ditmar*, 204 N. Y. 20.) The Westchester County Park Commission and the county of Westchester are empowered to impose a reasonable fee for use of its park facilities, including the use of parkways. (*Augustine* v. *Town of Brant*, 249 N. Y. 198; *Huse* v. *Glover*, 119 U. S. 543; *Kane* v. *New Jersey*, 242 U. S. 160; *Buck* v. *Kuykendall*, 267 U. S. 307; *People* v. *Kerr*, 27 N. Y. 188; *People ex rel. Cayadutta P. R. Co.* v. *Cummings*, 166 N. Y. 110; *Town of Oyster Bay* v. *Moses*, 248 App. Div. 598; 273 N. Y. 631; *Robia Holding Corp.* v. *Walker*, 257 N. Y. 431.)

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein, John C. Crary, Jr.,* and *Jack Goodman* of counsel), for respondent. Both in law and in fact the Hutchinson River Parkway is a public highway within the express general legislative prohibition against the imposition of tolls by local authorities contained in section 54 of the Vehicle and Traffic Law. (*City of Buffalo* v. *Lewis*, 192 N. Y. 193; *People* v. *President & Trustees of Village of Ossining*, 238 App. Div. 684; 264 N. Y. 574; *People ex rel. McLean* v. *Flagg*, 46 N. Y. 401; *People ex rel. City of New York* v.

*N. Y. Rys. Co.*, 217 N. Y. 310; *Thompson* v. *Orange & Rockland Electric Co.*, 254 N. Y. 366; *Davis* v. *Mayor of New York*, 14 N. Y. 506; *Perlmutter* v. *Greene*, 259 N. Y. 327.) The alternative form of government prescribed by chapter 617 of the Laws of 1937 for Westchester county and adopted by the people thereof contains no authorization for the abrogation of general State law or for the adoption of Local Law No. 5 imposing tolls on the Hutchinson River Parkway. (*Jewish Consumptives' Relief Society* v. *Town of Woodbury*, 230 App. Div. 228; 256 N. Y. 619; *Bradley* v. *Degnon Construction Co.*, 224 N. Y. 60; *People ex rel. City of New York* v. *N. Y. Rys. Co.*, 217 N. Y. 310; *Browne* v. *City of New York*, 241 N. Y. 96; *Robia Holding Corp.* v. *Walker*, 257 N. Y. 431.)

CONWAY, J. In 1922 there was created by an act of the Legislature the Westchester County Park Commission. (L. 1922, ch. 292.) The Commission constructed and now maintains, except for certain portions hereinafter mentioned, the Hutchinson River Parkway. That parkway consists of a four-lane roadway for vehicular traffic, two lanes moving in each direction, and extends through the county of Westchester in a northeasterly direction for a distance of some sixteen miles. The roadway has been so constructed, by means of bridges, underpasses, overpasses and traffic circles, as not to cross at grade any highway or other public road or the right of way of any public utility. Certain portions of the parkway consisting of direct continuations and extensions thereof at either end, constructed in similar manner, extending into the city of New York at the southerly end and to the boundary line between the States of New York and Connecticut at the northerly end and there connecting with the Merritt Parkway extending into the State of Connecticut, were constructed by the State of New York with funds of the United States allocated pursuant to the Federal Emergency Relief Appropriation Act of 1935. These extensions total three and seven-tenths miles in length and are maintained by the Westchester County Park Commission, acting for the county of Westchester, in the

same manner as its county parkways under agreements executed by it with the New York State Department of Public Works, Division of Highways. It is conceded, to quote the agreed statement of facts, that the parkway "provides a through route for motor vehicles between the City of New York, the State of Connecticut, points in the County of Westchester and northern New York, and connects with through public highways at either end and at points along its route."

On August 7, 1939, the Board of Supervisors of the County of Westchester adopted a local law known as "Local Law No. 5," described as "An act providing for the collection of tolls on the Hutchinson River Parkway between the Boston Post Road and Westchester Avenue, in the County of Westchester, authorizing the installation of the necessary toll station and equipment in connection therewith, and providing for the disposition of the tolls collected." The toll booths and stations were erected upon the portion of the parkway constructed by the county of Westchester with county funds pursuant to the statute creating the Westchester County Park Commission. Vehicles traveling on the three and seven-tenths miles of extensions constructed with funds other than those of the county of Westchester may avoid the payment of the tolls by leaving the parkway before reaching the toll booths and traveling by more circuitous routes.

The State of New York contends that no power was conferred upon the county of Westchester or the Westchester County Park Commission to impose or collect a toll for the use of the Hutchinson River Parkway or any portion thereof.

The determination of that question depends upon whether the Hutchinson River Parkway is a public highway and whether section 4 of the Westchester County Charter (L. 1937, ch. 617) conferred upon the county the power to supersede section 54 of the Vehicle and Traffic Law (Cons. Laws, ch. 71), a general State statute.

The Vehicle and Traffic Law, in section 2, partially defines what constitutes a public highway. It reads as follows: " ' Public highway ' shall include any highway, road, street, avenue, alley, public place, public driveway or any other public way." By the terms of the definition there are public highways not described by the named inclusions. *Elliott on Roads and Streets*, in section 3, page 4, gives the test for determining when a way is a highway, as follows: " If a way is one over which the public have a general right of passage, it is, in legal contemplation, a highway, whether it be one owned by a private corporation or one owned by the government, or a governmental corporation, and whether it be situated in a town or in the country. No matter whether it be established by prescription or by dedication, or under the right of eminent domain, it is a highway if there is a general right to use it for travel. The mode of its creation does not of itself invariably determine its character, for this, in general, is determined by the rights which the public have in it."

A four-lane roadway for vehicular traffic with two lanes moving in each direction and providing a through route for motor vehicles between the city of New York, the State of Connecticut, points in the county of Westchester and northern New York, and connecting with through public highways at either end and at points along its route, and over which the public has had a general right of passage since its construction and elongation, is clearly a highway. Landscaping the right of way does not make " an ordinary park " out of what is essentially a highway.

Even within the inclusions mentioned in the statute, the Hutchinson River Parkway is a " public highway." Certainly it is a " public driveway " and " public way " under the statute as broadened by the amendment of 1930 (L. 1930; ch. 756). The statute theretofore had read: " ' Public highway ' shall include any highway, country road, county highway, state highway, state road, public street, avenue, alley, park, *parkway* or public place in any county, city, borough, town or village, in this state." The Legislature removed

any restrictive mention of municipal subdivisions and extended the definition of " public highway " so as to include not only a " public place " but also a " public driveway or any other public way." It indicated the policy of the State to meet the conditions created and constantly altered and enlarged by the automobile to include every " public way " upon which an automobile might lawfully be operated by the public.

Indeed, the contention that the Hutchinson River Parkway is not a public highway would not be claimed to be serious except for the decision in *Matter of County of Westchester (Hutchinson River Parkway)* (246 N. Y. 314), where this court decided that this very parkway was not a " street, avenue, highway, or road " within the meaning of section 90 of the Railroad Law (Cons. Laws, ch. 49).

That case arose under an entirely different statute, having no concern with the use of the parkway by motor vehicles. It was there held that the Hutchinson River Parkway was not " a street, avenue, highway, or road " of a municipal corporation within the meaning and intent of section 90 of the Railroad Law requiring notice to be given by the municipal corporation to a railroad corporation across whose right of way such street or highway, was to be constructed. The Railroad Law contained no definition of the words street, highway, or municipal corporation. The parkway extended at that time through several municipalities, yet control and management was not vested in them, but in the Westchester County Parkway Commission. Judge O'BRIEN, writing for the court in that case (pp. 319, 320), said: " Westchester county is literally a municipal corporation (Section 3, General Corporation Law [Cons. Laws, ch. 23]; section 3, County Law [Cons. Laws, ch. 11]; section 2, General Municipal Law [Cons. Laws, ch. 24]), yet we cannot forbear to reject the idea that when the Railroad Law deals with the laying out of new streets by municipal corporations, it ever contemplated a rural parkway through several townships as a street of a municipal corporation. It must, in reason, have intended

to restrict the idea of a street to its ordinarily accepted meaning. *It meant conventional streets in a city or village.* Only by straining at technical definitions in other statutes which statutory definitions are wholly at variance with accepted meanings and are intended to be applied in the light of common sense and in accordance with the contexts of those statutes, can an extensive parkway system of a county be dragged within the inclosure of section 90 of the Railroad Law and be transformed into a street." (Italics supplied.)

In other words, it was decided that the meaning and intent of the section of the Railroad Law there considered was not applicable to such an extended rural parkway, that a county was not a municipal corporation within its meaning, and that, since the Railroad Law did not contain its own definition of highways, the definition suitable was that contained in the Westchester County Park Commission Act.

Even more important, the opinion spoke of times and conditions antedating the determination that it was expedient or necessary to construct the continuations and extensions of the parkway so as to extend it into the city of New York and to the Connecticut line so as to join the Merritt Parkway of that State — continuations and extensions, incidentally, made under the provisions of the Federal Highway Act (U. S. Code, tit. 23), containing in section 9 the express condition that no tolls be charged on highways constructed thereunder. While no point of this restriction is made here, in view of the location of the toll booths and stations, it has strong bearing on the present character of the parkway when considered in connection with the provisions of the Vehicle and Traffic Law and the situation obtaining at the time of the decision in *Matter of County of Westchester* (*Hutchinson River Parkway*) (*supra*), in 1927. The language of the opinion did not establish or fix the then conditions so as to make them unchangeable and may not now be held applicable to entirely different ones.

The Vehicle and Traffic Law is a general statute governing the use of motor vehicles. It makes no distinction between city, town and country roads or whether they run through parks or constitute part of a park system. The test would appear to be whether the public has a general right of passage in motor vehicles. If it have, then that is the measuring rod to be applied under the statute in determining the right of the public to the free use of all public passages or ways, however they may be termed

Section 54 of that act provides:

" § 54. Local ordinances prohibited. Except as otherwise provided in this chapter, local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner of a motor vehicle or motor cycle, or from any operator or chauffeur to whom this chapter is applicable, any tax, fee, license or permit for the use of the public highways, or excluding any such owner, operator or chauffeur from the free use of such public highways, * * *."

Section 2, subdivision 19, defines " Local authorities " to include all officers, boards, committees and other public officials of counties. The clear purpose of the statute was to prevent local tolls for the use by automobiles of any public place in the State where they may properly be operated.

Once it becomes manifest that the Hutchinson River Parkway is a public highway, then a reading of section 54 of the Vehicle and Traffic Law indicates that the passage of any law such as Local Law No. 5 is proscribed.

No power to abrogate the prohibition was conferred upon the county by section 4 of the Westchester County Charter. That section reads as follows: " The enumeration of particular powers by this act shall not be deemed to be exclusive, but in addition to the powers enumerated or implied herein or appropriate to the exercise of such powers, the county shall have and may exercise all powers which under the constitution of the state of New York it would be competent for this act specifically to enumerate, and all

powers necessarily incident or fairly to be implied, not inconsistent with the provisions hereof * * *."

This must be construed as a general grant of local administrative power and not as authority permitting the abrogation of a general State law forbidding a tax, fee, license or permit for the use of the public highways.

In *Jewish Consumptives' Relief Society* v. *Town of Woodbury* (230 App. Div. 228; affd., 256 N. Y. 619) Presiding Justice LAZANSKY said (at p. 234): " The authority of a municipality to abrogate State law is never implied or inferred. It is only derived from express grant, never from a general grant of power. A State policy may not be ignored by a municipality unless it is specifically empowered so to do in terms clear and explicit."

In *People ex rel. Kieley* v. *Lent* (166 App. Div. 550; affd., 215 N. Y. 626) the court said: " The intent that municipal corporations by ordinance can supersede the State law will not be inferred from general grants of power, nor will such authority be held to exist as an implied or incidental right. (Dillon, Mun. Corp. [5th ed.], § 632.) As all municipal authority comes from the Legislature, the provisions of municipal charters, however broad, are subject to such restrictions as may be imposed by general laws."

Since, then, the Hutchinson River Parkway is a public highway and local authorities are without power to levy tolls thereon, Local Law No. 5 is invalid.

The judgment should be affirmed, without costs.

LEWIS, J. (dissenting). I dissent from the decision about to be made which is based upon the conclusion that Hutchinson River Parkway is a public highway for the use of which the exaction of a motor vehicle toll is prohibited by section 54 of the Vehicle and Traffic Law.

It must be admitted at the outset that Hutchinson River Parkway — to which, for convenience, I shall refer as the parkway — is so located and has been so improved that it may be reached at either end and at intermediate points by through motor traffic which formerly may have used the Boston Post Road and other through routes between the

city of New York and points eastward in the New England States. I do not believe, however, that the plaintiff's case is helped by that fact.

The parkway is not built along an old, established public highway, but has been constructed on new location through lands acquired by Westchester county solely for park purposes. Upon this four-lane motorway traffic risks at intersections have been reduced by separating the grades of the intersecting roads and along its total length the parkway passes through park lands beautified by landscaping and planting of rare quality. Thus constructed the parkway does not lose its character as a park road because motorists in great number, some of whom are bound for distant points, may choose to take advantage of a county park facility which serves for sixteen miles to make of motoring a recreation.

We should not disregard the fact that it was to promote health and outdoor recreation — in line with an enlightened appreciation of the social responsibilities of both State and local agencies — that the defendant Westchester County Park Commission was created by the Legislature (L. 1922, ch. 292) and later constructed the parkway with the control of which we are now concerned. Having already entered upon a broad program for the creation and maintenance of State parks in the interest of the health and welfare of the People of the State, the Legislature granted to the defendant Park Commission, as a statutory agency of Westchester county, a charter which authorized the acquisition of land for county parks for the declared purpose of promoting " public health, public welfare, education, * * * recreation, * * * or amusement." (L. 1922, ch. 292, §§ 3, 10.) By section 3 of the same charter the Legislature defined a " park " as including all " parkways " and " boulevards " with entrances and approaches thereto and any " streets " or " roads " which pass through such park. It would seem clear, therefore, that in authorizing the defendant Commission to acquire, improve and manage parks and to build roads, boulevards and parkways, the

Legislature anticipated and intended that traffic from connecting highways would take advantage of the improved park facilities. Otherwise how could the parkway be put to use? How could it serve to accomplish the legislative purpose of promoting public health and recreation?

As a further indication that the Legislature did not intend the parkway to be a public highway subject to the regulatory prohibitions of section 54 of the Vehicle and Traffic Law, section 17 of the defendant Commission's charter gives to it the " exclusive " power, " *notwithstanding the provisions of any general or special law to the contrary,*" to adopt rules, regulations and ordinances governing the use of parkways and the control of traffic through the same. In *Maltby* v. *County of Westchester* (267 N. Y. 375, 378), this court interpreted the legislative grant of power to the present defendant Park Commission as giving to it " * * * the sole and exclusive control and management of all streets and highways and bridges within the limits of any park under its jurisdiction, with the right and power to alter or discontinue them, and may make rules and regulations and ordinances for the use of the park." It also appears from the case last cited that when the State undertook at State expense to connect outside highway routes with the defendant county's parkways, it did not treat the parkways as State highways but accomplished that purpose by means of legislation which made the present defendant Park Commission a " temporary agent of the State." (See *Paige* v. *State of New York*, 269 N. Y. 352, 356; L. 1932, ch. 559, § 1.)

Furthermore, on two prior occasions this court has been required to determine as a matter of law whether this particular parkway was a park facility or a public highway, and in each instance it has ruled it was the former. In *Matter of County of Westchester (Hutchinson River Parkway)* (246 N. Y. 314) the opinion by Judge O'BRIEN points to characteristics peculiar to the parkway and refers specifically to the fact that in the charter of the defendant Park Commission the Legislature defined " park " as including

" parkways." This definition and the consideration of other facts led the court to conclude that " The Hutchinson River Parkway does not seem to us to be ' a street, avenue, highway or road ' within the meaning of section 90 of the Railroad Law. * * * It is a park " (p. 318). I do not share the view of a majority of the court that the statement last quoted was not determinative of issues there decided. The point there in controversy required the court to determine whether the parkway was a street, avenue, highway or road within the meaning of section 90 of the Railroad Law. In doing so it gave consideration not only to the defendant Park Commission's charter but also to the physical characteristics of the parkway itself as finally constructed. The court appears to have had no doubt as to what was determined in the *Westchester County* case (*supra*) when later, in *Westchester Electric R. R. Co.* v. *Westchester County Park Commission* (255 N. Y. 297), it reiterated its ruling upon that point in the introductory statement of the opinion: " The Hutchinson River Parkway, *which is a park* [citing *Matter of County of Westchester*, *supra*], was laid out by defendant Commission * * * " (p. 299).

If, therefore, as I believe, the parkway is a park facility — not a public highway within the prohibition of section 54 of the Vehicle and Traffic Law — there remains for consideration the question whether the Board of Supervisors of Westchester county had the power to enact Local Law No. 5, which makes provision for the collection of motor vehicle tolls for the use of the parkway.

The authority of Westchester county, acting through its agent, the defendant Park Commission, to acquire lands for park purposes and to build parkways, has not been questioned. Nor can there be doubt that, in offering to public use the wide variety of park facilities which that county now affords and in the maintenance and control of those facilities, the county acts in a proprietary capacity — not governmental. What was said by Judge POUND in *Augustine* v. *Town of Brant* (249 N. Y. 198) in refer-

ence to the maintenance and control of a park by a township applies with equal force to the defendant county's function in its control of the parkway (p. 204): "The establishment of town parks is not a public duty imposed upon the town and the town does not act as an agent of the State when it avails itself of the privilege of maintaining them. * * * When the town assumes the authority to own and maintain parks, it goes outside the political power of a local subdivision of the State to engage in a *quasi* private undertaking" (p. 205). (Cf. *Collentine* v. *City of New York*, 279 N. Y. 119, 124.)

If, therefore, Westchester county's function in the construction and maintenance of the parkway was in character proprietary, it follows, as the term implies, that the county in its private capacity — as proprietor — has the power to control the use of its parkways free from State control. If proof is needed that the State has formally recognized the defendant county's freedom from the prohibition against the collection of tolls contained in section 54 of the Vehicle and Traffic Law, I point again to section 17 of the defendant Park Commission's charter (L. 1922, ch. 292, § 17), by which the Legislature acknowledged the Park Commission's "*exclusive power* to adopt and enforce rules, regulations or ordinances governing the use of said park * * * and traffic in and through the same." The significant fact is that in its declaration of "*exclusive* power" the Legislature inserted the provision that it existed "notwithstanding the provisions of any general or special law to the contrary."

In addition to the implied power of the defendant county, functioning in its proprietary capacity, to collect tolls as an incident to the control of the parkway, I find in various statutes a delegation of power — if such a delegation of power be needed — broad enough to authorize the exercise of authority which the Board of Supervisors invoked when Local Law No. 5 was adopted. The charter granted to the county of Westchester by chapter 617 of the Laws of 1937 is the Legislature's answer to a demand by the people

of that county for a broader measure of home rule in accord with sections 26 and 27 of article III of the Constitution, effective in 1937. (State Const. of 1938, art. IX, §§ 2, 3, 4.) When the new county charter became effective on January 1, 1939, section 69 thereof specifically continued the defendant Park Commission as a county agency and authorized it to exercise such powers and perform such duties as are " conferred or imposed on it by law, not inconsistent with the provisions of this act * * *." Previously, by section 4 of chapter 292 of the Laws of 1922, the Legislature had declared that " The acquiring, improving and embellishment of parks under the jurisdiction of the park commission or lands acquired as in this act provided, together with the maintenance thereof and all incidental proceedings in connection therewith for the purpose of carrying out the provisions of this act are hereby declared to be for a *county purpose.*"

Such a legislative declaration of purpose was lacking in *Adler* v. *Deegan* (251 N. Y. 467), where the application of the constitutional amendment giving home rule to cities was involved. Despite that lack, however, the concurring opinion by Chief Judge Cardozo states (p. 484): " Many welfare measures are city affairs solely. If a city lays out a *park* * * * it is exercising the police power, and is acting for the welfare of its inhabitants, yet acting in a matter that is distinctively its own affair, a matter that is bound up with its own business, its own finances, its own corporate activities."

Treating the construction, management and control of the parkway as a " county purpose " within the legislative declaration quoted above, and assuming that the Legislature itself could authorize by statute the collection of motor tolls for the use of the parkway (*Robia Holding Corp.* v. *Walker*, 257 N. Y. 431, 436, 437; *Town of Oyster Bay* v. *Moses*, 248 App. Div. 598; affd., 273 N. Y. 631; *Huse* v. *Glover*, 119 U. S. 543, 548), I find in the defendant county's charter (§ 4) power delegated by the Legislature broad enough in scope to authorize the enactment of Local Law No. 5. That section provides:

"§ 4. Enumerated powers not exclusive. The enumeration of particular powers by this act shall not be deemed to be exclusive, but in addition to the powers enumerated or implied herein or appropriate to the exercise of such powers, the county shall have and may exercise all powers which under the constitution of the state of New York it would be competent for this act specifically to enumerate, and all powers necessarily incident or fairly to be implied, not inconsistent with the provisions hereof. * * *."

There is no need to extend beyond their fair intendment the Legislature's words of grant last quoted. The delegation of power is in broad terms — broad enough, as I believe, to authorize the enactment of the local law here in question. It is not for us to question as a matter of public policy the extent of power so delegated. "The wisdom or unwisdom of the statute is a matter for the Legislature and not for the courts, which cannot legitimately question the policy or condemn the effects of any law consistent with the organic law of the State and nation." (*Gautier* v. *Ditmar*, 204 N. Y. 20, 30.)

The judgment entered upon the decision of the Appellate Division should be reversed and judgment granted in favor of the defendants upholding the validity of Local Law No. 5, with costs.

Lehman, Ch. J., Loughran and Sears, JJ., concur with Conway, J.; Lewis, J., dissents in opinion, in which Finch and Rippey, JJ., concur.

Judgment affirmed.