In the Matter of ALBERT TARTAGLIA et al., Petitioners, against HAROLD J. McLAUGHLIN, a Justice of the Municipal Court of the City of New York, et al., Respondents.

Supreme Court, Special Term, Kings County, November 26, 1947.

*Arthur Cooperman* for petitioners.

*James P. Murtagh, Counsel to Temporary City Housing Rent Commission and Special Assistant Corporation Counsel* (*William L. Messing* and *David A. Steinbock* of counsel), for Harold J. McLaughlin, respondent.

*Nathaniel L. Goldstein, Attorney-General,* for Samuel Pearlman, respondent.

*John E. Donnelly* for Tenants' Committee of 270 Park Avenue, *amicus curiæ.*

*John P. Stephens* for James Kelly, *amicus curiæ.*

STEINBRINK, J. Petitioners seek an order to compel the respondents, as Justice and Clerk of the Municipal Court of the City of New York, to issue a warrant for the eviction of the tenant Kelly. Cross motion to dismiss as to the respondent Winter is granted on consent and his name is stricken from the proceeding. The remaining respondents are represented by the Attorney-General of the State of New York and the Corporation Counsel of the City of New York and, by arrangement between them, the latter presented the argument on their behalf.

There is no dispute as to the essential facts. Petitioners are the owners of residential property situated in the city of New York. They heretofore obtained an Office of Price Administration certificate authorizing the tenant's eviction after February 23, 1947. Such certificate was procured in accordance with the requirements of then existing law (Emergency Price Control Act of 1942, as amd.; U. S. Code, tit. 50, Appendix, § 901 *et seq.*; **and the rent regulations promulgated thereunder).**

The tenancy in question was duly terminated and a summary proceeding was instituted to remove the tenant as a hold-over. The proceeding came on for trial on April 11, 1947, and a final order was made awarding possession to the petitioners, but the issuance of a warrant was stayed until September 11, 1947. Subsequently the tenant obtained an order embodying a stay requiring the petitioners to show cause on September 18, 1947, why the stay should not be continued. In the meantime, on September 17, 1947, the City of New York enacted an emergency eviction control law (Local Laws, 1947, No. 66, of City of New York), the provisions of which will be adverted to later. At this point it suffices to state that the motion for a further stay was granted on the assumption of the validity of the local law. Thus, as a condition precedent to the issuance of a warrant, the Justice directed the petitioners to comply with the requirements of the new local law by obtaining an eviction certificate from a newly formed Temporary City Housing Rent Commission created by another local law of the City of New York (Local Laws, 1947, No. 54 of City of New York). Petitioners' subsequent application to the clerk of the Municipal Court for a warrant of eviction was denied upon their failure to present the required certificate.

Local Law No. 66 purports to amend the Administrative Code of the City of New York by adding a new section thereto (§ U41-7.0) in relation to evictions from apartments in the city of New York. The existence of an emergency by reason of a housing shortage is asserted as justification for its enactment. It appears to be patterned after the Federal Housing and Rent Act of 1947 (U. S. Code, tit. 50, Appendix, § 1881 *et seq.* [Public Law 129, 80th Cong., 1st Sess.]), to the extent, at least, that the grounds upon which actions or proceedings may be maintained are generally the same in both statutes. Additional restrictions upon the right to remove tenants are contained in the local law. The latter act also provides that "no tenant shall be removed from any apartment by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise" unless the Temporary City Housing Rent Commission shall issue a certificate certifying that one or more grounds for eviction or exclusion exists (§ U41–7.0, subd. c).

Except for the provisions of Local Law No. 66, as noted above, there is no question as to petitioners' right to the warrant sought. Whether such law is within the field of legislative power of the City of New York is the specific problem to be considered.

Petitioners contend that the local law is abortive in that it relates to matters exclusively of State concern. The advocates of the statute defend its enactment as a valid exercise of the local legislative power reserved to cities under the home rule article of the Constitution (N. Y. Const., art. IX) and the City Home Rule Law. In approaching the question before the court, I shall not attempt to lay down any definite or comprehensive rule for an accurate distinction between State affairs and matters of municipal concern. " The line of demarcation must be drawn by the court as cases arise." (*Adler* v. *Deegan*, 251 N. Y. 467, 480, per POUND, J.)

Initial inquiry into the conditions which led to the enactment of the statute under attack is hardly necessary. The inadequacy of housing facilities is a matter so notorious and widespread as to admit of no doubt of its existence. That it is a problem of utmost gravity which, in a proper case, will justify some degree of public regulation is not open to dispute (see *Block* v. *Hirsch*, 256 U. S. 135; *People ex rel. Durham R. Corp.* v. *La Fetra*, 230 N. Y. 429). It remains to be considered whether a municipality may legislate with respect thereto in the manner here attempted.

True it is that broad power is conferred upon the legislative body of each city to adopt and amend local laws relating to the " property, safety and health " of its inhabitants (N. Y. Const., art. IX, § 12; City Home Rule Law, § 11, subd. 2). But this grant of authority is subject to the limitation that such local laws shall not be inconsistent with the Constitution and the laws of the State (N. Y. Const., art. IX, § 12). Nor may they " change or supersede any act of the legislature " (City Home Rule Law, § 11, subd. 2).

The primary purpose of Local Law No. 66 is to restrict evictions from apartments. The effect of this law, if upheld, would be to defeat or delay the institution or prosecution of thousands of summary proceedings which are already pending in the courts or with reference to which many more thousands of applications for certificates are now pending before the commission. Summary proceedings rest entirely on statutory enactment. They were first authorized in this State by chapter 194 of the Laws of 1820, and are now regulated by article 83 (§§ 1410-1447) of the Civil Practice Act (L. 1920, ch. 925, as amd.). The Civil Practice Act is a general State statute and is applicable to the civil practice " in all the courts of record of the state." (Civ. Prac. Act, § 1). It governs summary proceedings which are brought in the Municipal Court of the City of New York.

The organization of courts and the procedure to be followed therein are matters exclusively of State concern (*Adler* v. *Deegan, supra,* p. 489, per CARDOZO, Ch. J.). They are not subject to control or regulation by the municipalities within whose territorial confines they are situated (*Gennis* v. *Milano,* 135 Misc. 209; *Matter of Siracusa,* 125 Misc. 882; *People* v. *Aptaker,* 25 N. Y. S. 2d. 950). If the law were otherwise it would mean that every city in the State, through its local legislative body, would be empowered to regulate summary proceedings in their local courts and thus create a hugger-mugger situation with' resultant '' confusion worse confounded ''.

The case of *Gennis* v. *Milano* (*supra*) merits particular attention for it too, involved an attempt by the City of New York to impose restrictions upon the right to maintain summary proceedings. Local Law No. 9 of 1929 of the City of New York was an emergency housing law which was substantially a re-enactment of a State law which had expired a short time prior to its adoption. In addition, the local law undertook to amend certain provisions of the Civil Practice Act relating to summary proceedings so as to abolish the right of the landlord to recover possession of premises after the expiration of the tenant's term, except in a few limited instances. It was declared to be invalid for the reason that the attempt to change the operation of summary proceedings was (p. 211) '' an interference with the remedies and procedure provided by the Legislature for the entire State.''

In *Matter of Siracusa* (*supra*), it was held that the City of Geneva had no power to adopt as part of its local law a provision for the issuance of a search warrant by a city judge and to specify the procedure to be followed upon its return. The court there held that the power to constitute local courts and to prescribe the procedure therein resides in the State Legislature. To similar effect is the decision in the *Aptaker* case (*supra*).

Other cases which point to the result to be reached herein are *Matter of Kress Co.* v. *Dept. of Health* (283 N. Y. 55), *Jewish Consumptives' Relief Soc.* v. *Town of Woodbury* (230 App. Div. 228, affd. 256 N. Y. 619) and *People* v. *County of Westchester* (282 N. Y. 224).

*Matter of Kress* (*supra*) had to do with the validity of a New York City Health Department regulation which was in conflict with prior action taken by the State Commissioner of Agriculture and Markets under authority of a general statute. The Court of Appeals ruled that the city could not make regulations

inconsistent with the laws of the State and noted (p. 60) that " A general grant of local administrative power never confers authority to abrogate a general State statute."

A similar conclusion was reached in *Jewish Consumptives' Relief Soc.* v. *Town of Woodbury (supra)*. In that case a town ordinance, which in effect prohibited the erection of a tuberculosis hospital within the town limits, was declared void as in contravention of the Public Health Law, a State statute. Presiding Justice LAZANSKY stated (p. 234): " The authority of a municipality to abrogate State law is never implied or inferred. It is only derived from express grant, never from a general grant of power. A State policy may not be ignored by a municipality unless it is specifically empowered so to do in terms clear and explicit."

*People* v. *County of Westchester (supra)* stands for the proposition that a general grant of local administrative power to a county does not confer power upon it to abrogate the prohibition of a general State law.

Reverting to the local law under consideration, I am of the opinion that it is not compatible with the provisions of the Civil Practice Act insofar as it assumes to impose restrictions upon the rights of litigants to bring actions and proceedings in the courts to recover possession of dwelling space. Without in any way disparaging the motive of the municipal lawmakers, it is enough to say that their powers must be exercised in a manner consistent with the authority granted by the Constitution and City Home Rule Law. The attempt made to legislate in a field which has been pre-empted by the State was not a valid exercise of local legislative power.

To uphold the law in question would be to say that a local administrative body, such as the Temporary City Housing Rent Commission, could arrogate unto itself the functions of duly constituted courts and determine whether litigants may or may not avail of the legal forum in actions and proceedings to recover possession of real property. One of the evils attendant upon such a result was pointed out by Presiding Justice LEWIS of this department on the occasion of the fiftieth anniversary of the appellate branch of this court as now constituted. Addressing himself to the " increasingly dangerous limitations upon the scope of judicial review — in the field of administrative action "? the learned justice said that " the danger is not simply a threat to judicial power. The property and personal rights of our people are the chief targets of administrative action when that action is not made the subject of adequate judicial review." Be

that as it may, the more fundamental objection here is that the city is attempting to enlarge upon its own powers under the guise of an amendment to its Administrative Code. This, for the reason already stated, it cannot do.

While it may be that other remedy is available to the petitioners, a mandamus order may be granted as a matter of discretion when the right to relief is clear (*Matter of Donner-Hanna Coke Corp.*, 212 App. Div. 338, 342, affd. 241 N. Y. 530; 101 Carmody on New York Pleading and Practice, p. 547). In view of the importance of an ultimate authoritative determination herein, the court does not " pause to consider whether the question is presented in appropriate proceedings " (*Matter of Kuhn v. Curran*, 294 N. Y. 207, 213) for in the last analysis the matter is of such transcendent public interest that sooner or later it must be decided and this court will not avoid responsibility in that regard.

To the extent that Local Law No. 66 and the regulations of the commission are inconsistent with the provisions of the Civil Practice Act, they are invalid. Article 83 of the Civil Practice Act applies to all cities generally and cannot be modified or superseded by local city laws.

The petitioners' application is accordingly granted, but the execution of the order to be entered hereon will be stayed pending the hearing and determination of an appeal therefrom, upon condition that such appeal is perfected and noticed for argument for the next available term of the Appellate Division. Settle order on notice.