Cooke, J.
Fire Island is an elongated sandspit in Suffolk County. Lying between the Great South Bay and Atlantic Ocean, just off the south central shore of Long Island, its overall length is about 31 Vi miles and its width varies from 200 yards to half a mile. Marked by its almost uninterrupted stretch of sand beach backed up by low dunes, it is a natural barrier reef of very low elevation, one portion, the "sunken forest” being below sea level. Although a popular summer resort, it is windswept and frequently battered by autumn hurricanes. Interestingly, it acquired its name from fires built there as signals to vessels during the War of 1812.
Towards its western end, Fire Island is connected with the mainland of Long Island by the Robert Moses Causeway. As one proceeds from the southerly terminus of the causeway on Fire Island, he or she first proceeds on an inland route, easterly on a paved road through the Fire Island State Park, then continues on a paved roadway through an area under control of the United States Government, then through more State park lands still on a paved road and then travels on a *9 sandy unpaved road about 435 feet to the westerly line of a section known as Lighthouse Shores. At this junction, the inland route connects with the westerly terminus of a walk known as Cedar Court. Lighthouse Shores lies in an unincorporated area of Fire Island known as Kismet, a part of the Town of Islip.
Plaintiff Lighthouse Shores, Inc., is a property owner and the individual plaintiffs are residents and property owners in Kismet. In this action, besides certain injunctive relief, plaintiffs seek a declaration that an ordinance of the Town of Islip, as amended, regulating the use of vehicles on that part of Fire Island within said town, exclusive of lands within an incorporated village and of lands within the Fire Island National Seashore, is void. Special Term found that the walks in the Lighthouse Shores section were private and owned by plaintiff corporation "except for two lots”, that so much of the ordinance as purports to regulate traffic over State-owned and maintained roads between the causeway and the westerly line of Lighthouse Shores is beyond the powers of the town, that the amendment of the ordinance requiring that applicants be year-round residents with no other residence was invalidly adopted, that this amendment is also invalid because it makes an invidious discrimination and that the general welfare of the community is not promoted by the barring of owners of homes in Lighthouse Shores from the walks therein and from the route extending from the causeway to the westerly line of Lighthouse Shores. The Appellate Division affirmed, without opinion.
Section 1604 of the Vehicle and Traffic Law, entitled "Local ordinances prohibited”, provides in pertinent part: "local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner of a motor vehicle or motorcycle, or from any operator or chauffeur to whom this chapter is applicable, any tax, fee, license or permit for the use of the public highways, or excluding any such owner, operator or chauffeur from the free use of such public highways * * * or in any other way restricting motor vehicles or motorcycles * * * or use of the public highways * * * and no ordinance, rule or regulation contrary to or in any wise inconsistent with the provisions of this chapter, now in force or hereafter enacted shall have any effect.” In turn, section 118 of the Vehicle and Traffic Law defines a highway as "[t]he entire width between the boundary lines of every *10 way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.” A public highway, under said law, includes any highway (§ 134). The proof at Special Term presented a question of fact as to whether the inland route stretching from the southerly terminus of the causeway to the westerly bounds of Lighthouse Shores was a public highway (see People v County of Westchester, 282 NY 224, 231). Special Term, upon adequate proof, found that it was and the Appellate Division has affirmed that finding. Section 61-1 of the ordinance specifically excludes from its ambit "lands contained within the Fire Island National Seashore” and, therefore, that portion of the inland route insofar as it traverses the National Seashore is unaffected by the ordinance. Consequently, Special Term’s determination as to said inland route should not be disturbed.
Subdivision A of section 61-2 of the ordinance provides that, except for official vehicles and school buses in specific instances, "[n]o motor vehicle shall be operated on or across Fire Island except under permit issued by the Board of Commissioners.” Subdivision H of this section, an amendment added February 13, 1973, provides that "[a]ll applicants for permits must submit a sworn affidavit that their twelve month sole residency is on Fire Island.” The contention that this amendment was invalidly adopted because no notice of hearing thereof was given is untenable. So far as relevant, section 130 of the Town Law provides: "The town clerk shall give notice of such [public] hearing by the publication of a notice in at least one newspaper circulating in the town, specifying the time when and the place where such hearing will be held, and in general terms describing the proposed ordinance. Such notice shall be published once at least ten days prior to the day specified for such hearing.” (Emphasis added.) The rather lengthy notice published on December 20, 1972 for the hearing of January 2, 1973 complied with said section. The notice indicated that the purpose of the public hearing was to consider amending the ordinance entitled "Vehicular Uses: Fire Island” and listed proposed amendments. Among the proposals set forth were those that, except for official vehicles and school buses, no motor vehicle shall be operated on Fire Island except under permit issued by the board of commissioners, that the board shall have the power to set a limit on the total permits issued, that travel by motor vehicles would be limited to specific hours on certain days and periods of the *11 year and, significantly, after circumscribing permitted uses by public utilities and those engaged in refuse collection, one to provide that "[t]ravel on Fire Island by all other motor vehicles is prohibited.” The amendment of the ordinance, as adopted, was embraced within the notice.
Special Term determined that the ordinance, as amended, in barring owners of homes in Lighthouse Shores from access to the walks of Lighthouse Shores from the inland route does not promote the general welfare of the community. It found that use of these private walks was a reasonable one, that the prohibition was unreasonable, that the walks were maintained in good condition, that there was no evidence and that the court could not find that properly maintained walks cause or contribute to erosion or are ecologically detrimental or that their use is in derogation of the common good. It was also determined that the ordinance, as it purports to require owners of property at Lighthouse Shores to be year-round residents with no other residence in order to qualify for permits to operate their motor vehicles over the private walks of Lighthouse Shores, is invalid in that it makes an invidious distinction between owners who are year-round residents and those who are not.
Under subdivision 15 of section 130 of the Town Law, the town board of a town is empowered to enact, amend and repeal ordinances for the following purpose: "Promotion of public welfare. Promoting the health, safety, morals or general welfare of the community, including the protection and preservation of the property of the town and of its inhabitants, and of peace and good order, the benefit of trade and all other matter related thereto, insofar as the same shall not be inconsistent with existing law.”
The exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality. The ordinance may not be arbitrary. It must be reasonably related to some manifest evil which, however, need only be reasonably apprehended. It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be *12 assumed, justifies the disputed measure, this court’s power of inquiry ends. Thus, as to reasonableness, plaintiffs in order to succeed have the burden of showing that "no reasonable basis at all” existed for the challenged portions of the ordinance. (See Matter of Van Berkel v Power, 16 NY2d 37, 40; I. L. F. Y. Co. v Temporary State Housing Rent Comm., 10 NY2d 263, 269; Wiggins v Town of Somers, 4 NY2d 215, 218-219; Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541.)
The purposes of the permit regulations, as found by the town board and as set forth in the ordinance, are "to protect Fire Island and interests therein, to protect the health, welfare, safety and convenience of members of the public using Fire Island.” (§ 61-2, subd B.) This is consistent with the passage of the Fire Island National Seashore Act in 1964, where Congress recognized the special natural resources of Fire Island and acted to preserve for future generations the relatively unspoiled and undeveloped beaches, dunes and other resources of the island (US Code, tit 16, § 459e; People v Goodman, 31 NY2d 262, 266). From the outset the position of the formerly existing Fire Island National Seashore Advisory Commission (see US Code, tit 16, § 459e-8) was that the use of motor vehicles on Fire Island should be held to an absolute minimum, consistent with public welfare.
The island is a fragile strip of sand barrier only a half-mile wide at its widest. It is subjected to and protects the mainland from savage attacks from the ocean and by the elements. There is proof that after the completion of the Robert Moses Causeway, motor vehicle use on the island increased astronomically and that vehicles "were all over the place.” The public drove them not only on the inland route but on the beaches as well. There was also evidence from a professor of geology of the State University of New York, a specialist in geomorphology and a director of the Sea Grant Program of the State University which conducts a study known as the Coastal Erosion Stabilization and Utilization of the South Shore of Long Island. His testimony substantiated that the ecology of the Kismet area of Fire Island is greatly disturbed by vehicular traffic, causing deterioration of the ecological balance on the island and resulting in irreparable harm. The passage of motor vehicles destroys the vegetative mat by destroying the root system of the plant and, when this occurs, sand and soil particles necessary for vegetation are blown *13 away. These particles are entrained when wind velocity reaches nine miles per hour, a common occurrence during winter and early spring. Where there has been vehicular traffic at right angles to the inland route breaches have been made in the dunes so that, during high water, sand and other materials have been carried inland from Fire Island. The concrete part of the walks in Kismet were described as seven feet wide, thus hardly wide enough for one moving vehicle. Surely vehicles from time to time leave this narrow strip and, when pedestrians are confronted, movement to the surrounding sand is required on the part of either the vehicles or the pedestrians, setting the eroding process in motion. Giving to the amended ordinance the presumptions to which it is entitled, unconstitutionality has not been demonstrated beyond a reasonable doubt and plaintiffs have not fulfilled their burden of establishing a total absence of any reasonable basis for it.
The equal protection clauses permit the exercise by the State of a wide scope of discretion in enacting laws which affect some groups differently than others, and a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it (McGowan v Maryland, 366 US 420, 425-426). The classification here intends no arbitrary selection but simply seeks to subserve the general interests of the public, under a reasonably conceived plan, in an effort to preserve Fire Island and protect Long Island. In curtailing the operation of vehicles on Fire Island and in restricting permits to those residing solely there year round, the Town of Islip was confining the grant of limited permits to those who had the greater need for vehicular transportation, certainly a reasonable basis for differentiation.
The order of the Appellate Division should be modified, without costs, and the matter remitted to Special Term for entry of judgment in accordance with this opinion.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order modified, without costs, and case remitted to Supreme Court, Suffolk County, for entry of judgment in accordance with the opinion herein and, as so modified, affirmed.