[9 NE3d 351, 986 NYS2d 1]

In the Matter of BALDWIN UNION FREE SCHOOL DISTRICT et al., Respondents, v COUNTY OF NASSAU, Appellant. (Matter No. 1.)

BARBARA HAFNER et al., Respondents, v COUNTY OF NASSAU et al., Appellants. (Matter No. 2.)

In the Matter of TOWN OF NORTH HEMPSTEAD et al., Respondents, v COUNTY OF NASSAU, Appellant. (Matter No. 3.)

Argued January 7, 2014; decided February 18, 2014

## POINTS OF COUNSEL

*Rosenberg Calica & Birney LLP*, Garden City (*Ronald J. Rosenberg, Lesley A. Reardon, Judah Serfaty* and *Edward M. Ross* of counsel), and *Nassau County Attorney's Office*, Mineola, for appellants in the three above-entitled matters. I. Nassau County possesses the authority and power under the Local Legislation Act (L 1936, ch 879; L 1937, ch 618; L 1939, ch 700)

and its Charter to change or supersede the special law creating the County Guaranty, which special law does not apply "alike to all counties" but only applies to the County of Nassau. (*Yatauro v Mangano*, 17 NY3d 420; *Matter of Gizzo v Town of Mamaroneck*, 36 AD3d 162; *Landmark Colony at Oyster Bay v Board of Supervisors of County of Nassau*, 113 AD2d 741; *Matter of Holland v Bankson*, 290 NY 267; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95; *Matter of Dutchess County Dept. of Social Servs. v Day*, 96 NY2d 149; *Matter of Meegan v Brown*, 16 NY3d 395; *Ferres v City of New Rochelle*, 68 NY2d 446; *Riley v County of Broome*, 95 NY2d 455; *Fire Dept. of City of Rochester v City of Rochester*, 23 AD2d 183, 16 NY2d 933.) II. The Appellate Division's application of the 1963 version of NY Constitution, article IX, § 2 to limit the County of Nassau's local legislative authority was patently erroneous. (*41 Kew Gardens Rd. Assoc. v Tyburski*, 70 NY2d 325; *Matter of Kelley v McGee*, 57 NY2d 522; *Matter of Heimbach v Mills*, 67 AD2d 731; *Rozler v Franger*, 61 AD2d 46; *Pearson v Pearson*, 81 AD2d 291; *County of Nassau v Incorporated Vil. of Woodsburgh*, 86 AD2d 856; *Matter of Main St. in Vil. of Sing Sing*, 98 NY 454.) III. Even if the 1963 version of NY Constitution, article IX, § 2 (c) (ii) applied, it does not prohibit the County of Nassau from enacting the Common Sense Act (Local Law No. 18-2010 of the County of Nassau) as a matter of law. (*Yatauro v Mangano*, 17 NY3d 420; *Matter of Dutchess County Dept. of Social Servs. v Day*, 96 NY2d 149; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95; *City of White Plains v Del Bello*, 87 AD2d 483; *Sonmax, Inc. v City of New York*, 43 NY2d 253; *Matter of Fifth Ave. Off. Ctr. Co. v City of Mount Vernon*, 89 NY2d 735; *41 Kew Gardens Rd. Assoc. v Tyburski*, 70 NY2d 325.) IV. Even if NY Constitution, article IX, § 2 (c) (ii) (8) applied, the Common Sense Act (Local Law No. 18-2010 of the County of Nassau) is valid and proper based on this Court's holding in *Sonmax, Inc. v City of New York* (43 NY2d 253 [1977]), which established that Municipal Home Rule Law § 10 (1) (ii) (a) (8) exempts local laws related to property taxes from having to be consistent with any other laws. (*DJL Rest. Corp. v City of New York*, 96 NY2d 91.)

*Hamburger, Maxson, Yaffe, Knauer & McNally, LLP*, Melville (*David N. Yaffe* and *Richard Hamburger* of counsel), for Baldwin Union Free School District and others, respondents in the first above-entitled matter. I. The Nassau County Charter did not delegate authority to enact local laws that supersede state laws relating to real property tax refund obligations or that affect the maintenance or support of public education. (*People v*

*County of Westchester*, 282 NY 224; *Browne v City of New York*, 241 NY 96; *Clark v LaGuardia*, 245 App Div 325; *County Sec. v Seacord*, 278 NY 34; *Carodix Corp. v Comiskey*, 265 App Div 450, 291 NY 737; *Queens Park Gardens, Inc. v County of Nassau*, 255 App Div 625, 280 NY 789.) II. Local Law No. 18-2010 of the County of Nassau violates the provisions of the NY Constitution and the Municipal Home Rule Law forbidding the enactment of local laws relating to the levy, collection, administration, distribution and judicial review of local taxes inconsistent with state special laws, and affecting the maintenance and support of public education. (*Town of Amherst v County of Erie*, 260 NY 361; *Matter of Rab Co. Highland House Apts. v Tompkins County Bd. of Assessment Review*, 68 AD2d 374; *Sonmax, Inc. v City of New York*, 43 NY2d 253; *Bugeja v City of New York*, 24 AD2d 151, 17 NY2d 606; *Matter of Gizzo v Town of Mamaroneck*, 36 AD3d 162; *New York Tel. Co. v Supervisor of Town of N. Hempstead*, 77 AD3d 121; *Lanza v Wagner*, 11 NY2d 317; *Matter of Divisich v Marshall*, 281 NY 170; *Board of Educ., Union Free School Dist. No. 4, Town of Greece v Board of Educ. of City of Rochester*, 23 AD2d 805; *People ex rel. Elkind v Rosenblum*, 184 Misc 916, 269 App Div 859, 295 NY 929.) III. The shifting of municipal tax refund obligations onto school districts is not a matter of local concern. (*Konz v Bedell*, 273 App Div 777, 298 NY 585; *City of New York v Village of Lawrence*, 250 NY 429.) IV. Local Law No. 18-2010 of the County of Nassau is irrational, arbitrary and capricious, and Nassau County's appeals to alleged fairness do not obviate the necessity of state action to repeal the County Guaranty. (*Matter of Bowery Sav. Bank v Board of Assessors of County of Nassau*, 80 NY2d 961; *Matter of Steel Los III/Goya Foods, Inc. v Board of Assessors of County of Nassau*, 10 NY3d 445; *Town of Amherst v County of Erie*, 260 NY 361; *Matter of Wadhams*, 249 App Div 271.) V. The enactment of Local Law No. 18-2010 of the County of Nassau also violates the law of legislative equivalency and the Statute of Local Governments. (*Matter of Moran v LaGuardia*, 270 NY 450; *Matter of Torre v County of Nassau*, 86 NY2d 421; *County Sec. v Seacord*, 278 NY 34; *Matter of County of Nassau v Nassau County Interim Fin. Auth.*, 33 Misc 3d 227.) VI. In the alternative, Local Law No. 18-2010 of the County of Nassau fails to specify whether and which portions of Laws of 2006, chapter 503, it intended to supersede, in violation of Municipal Home Rule Law § 22 (1), and it transfers a duty without a referendum, in violation of the NY Constitution and Municipal Home Rule Law § 33-a. (*Kamhi v Town of Yorktown*, 74 NY2d

423; *Turnpike Woods v Town of Stony Point*, 70 NY2d 735; *Matter of Town of Smithtown v Howell*, 31 NY2d 365.)

*Catherine V. Battle*, New York City, and *Richard E. Casagrande* for Barbara Hafner and another, respondents in the second above-entitled matter. I. The public policy reasons for or against the County Guaranty should have no impact on the Court's determination, as they are exclusively vested in the state legislature. (*City of New York v State of New York*, 94 NY2d 577; *Matter of Wadhams*, 249 App Div 271.) II. The overarching principles of law applicable to this case compel the conclusion that Nassau County does not possess the power to repeal the County Guaranty by local law. (*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372; *Seaman v Fedourich*, 16 NY2d 94; *Adler v Deegan*, 251 NY 467; *City of New York v Village of Lawrence*, 250 NY 429.) III. The evolution of Nassau County's power to enact local laws demonstrates that it was not given power to repeal the County Guaranty by local law. IV. The evolution of Nassau County's power to enact charter laws demonstrates that it was not given power to repeal the County Guaranty by charter law. (*Konz v Bedell*, 273 App Div 777.) V. There is no authority in the Nassau County Charter for the repeal of the County Guaranty by local law. (*City of New York v State of New York*, 94 NY2d 577; *Sonmax, Inc. v City of New York*, 43 NY2d 253; *County Sec. v Seacord*, 278 NY 34; *Weber v City of New York*, 18 Misc 2d 543; *Matter of Divisich v Marshall*, 281 NY 170; *Gunnison v Board of Educ. of City of New York*, 176 NY 11; *Matter of Fuhrmann v Graves*, 235 NY 77.) VI. The 1963 Constitution and the Municipal Home Rule Law prohibit the repeal of the County Guaranty by local law. (*Matter of Albano v Kirby*, 36 NY2d 526; *Matter of Board of Educ. of City School Dist. of City of N.Y. v City of New York*, 41 NY2d 535; *Bugeja v City of New York*, 24 AD2d 151, 17 NY2d 606; *Matter of Board of Co-op. Educ. Servs. of Nassau County v Gaynor*, 33 AD2d 701; *Board of Educ., Union Free School Dist. No. 4, Town of Greece v Board of Educ. of City of Rochester*, 23 AD2d 805; *Matter of Reuss v Katz*, 43 Misc 2d 921, 21 AD2d 968.) VII. Local Law No. 18-2010 of the County of Nassau, if not invalid, is nevertheless inoperable because of Nassau County's failure to conduct a referendum.

*Jaspan Schlesinger LLP*, Garden City (*Maureen T. Liccione* and *Andrew M. Mahony* of counsel), and *Robert V. Guido*, Lindenhurst, for Town of North Hempstead and others, respondents in the third above-entitled matter. I. The restrictions on enactment of local tax laws in NY Constitution, article IX, § 2 apply

to Nassau County. (*Matter of Dutcher v Hatch*, 19 AD2d 341; *Jackson v Nassau County Bd. of Supervisors*, 818 F Supp 509; *Yatauro v Mangano*, 17 NY3d 420; *Matter of Thomas v Bethlehem Steel Corp.*, 95 AD2d 118, 63 NY2d 150; *B & F Bldg. Corp. v Liebig*, 76 NY2d 689; *Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d 161; *Brady v Village of Malverne*, 76 AD3d 691, 16 NY3d 806.) II. Nassau County has no authority to enact a tax law inconsistent with any state law. (*City of New York v State of New York*, 94 NY2d 577; *County Sec. v Seacord*, 278 NY 34; *Sonmax, Inc. v City of New York*, 43 NY2d 253; *New York Steam Corp. v City of New York*, 268 NY 137.) III. Local Law No. 18-2010 of the County of Nassau is unconstitutional because it is inconsistent with the Real Property Tax Law. (*Matter of O'Shea v Board of Assessors of Nassau County*, 8 NY3d 249.) IV. Local Law No. 18-2010 of the County of Nassau is void because it is impermissibly vague and has no rational relationship to its avowed purposes. (*Grossman v Baumgartner*, 17 NY2d 345; *Matter of Levine v Whalen*, 39 NY2d 510; *Williams v Mayor of Baltimore*, 289 US 36; *People v Abrahams*, 40 NY2d 277; *Long Is. Coll. Hosp. v Whalen*, 68 AD2d 274; *American Sugar Ref. Co. of N.Y. v Waterfront Commn. of N.Y. Harbor*, 55 NY2d 11; *Matter of Shanty Hollow Corp. v Poladian*, 23 AD2d 132, 17 NY2d 536; *Matter of Orchard Hgts., Inc. v Yancy*, 15 AD3d 854, 4 NY3d 710; *Connally v General Constr. Co.*, 269 US 385; *People v Stuart*, 100 NY2d 412.) V. Local Law No. 18-2010 of the County of Nassau violates NY Constitution, article IX, § 1 because it transfers county functions and duties to the town and special districts without a referendum. (*Matter of Heimbach v Mills*, 67 AD2d 731; *Rooney v City of Long Beach*, 42 AD2d 34; *Hausser v Giunta*, 88 NY2d 449.)

## OPINION OF THE COURT

ABDUS-SALAAM, J.

In this case, we are presented with, essentially, the following question: may Nassau County pass a local law that shifts the obligation to pay real property tax refunds from the County to its individual taxing districts, thereby superseding a special state tax law? We answer this question in the negative. The State Constitution vests in the State and the counties only a definite and circumscribed set of powers. Beyond its constitutional authority, neither a county nor the State can act, regardless of the perceived wisdom of its conduct or the nobility of its aims. In the case before us, Nassau County ran afoul of these precepts by exceeding its statutory and constitutional authority in its attempt to supersede a special state tax law.

I

These two hybrid CPLR article 78 proceedings/declaratory judgment actions and one declaratory judgment action arise from the intersection of the State's constitutional taxation power, Nassau County's long history of substantial home rule and the State's passage, at the County's request, of a law that designates real property tax refunds as a county charge.

A

To understand some of the County's present claims regarding the scope and origin of its power to pass local legislation, we must look to the genesis of those powers in the early 20th century. In the late 1930s, Nassau County elected to adopt an alternative form of government established by state legislation, and the County acquired local legislative powers under a state-drafted Charter and Administrative Code pursuant to article IX, § 2 of the 1938 State Constitution (*see* L 1936, ch 879; L 1937, ch 618, § 2; L 1939, ch 700, §§ 1-2; Nassau County Charter §§ 150-153). Under the Charter as amended by the Administrative Code, the County could levy taxes and "provide by ordinance a plan, not inconsistent with the terms of this [charter], for the assessment of property for tax purposes . . . the levy of taxes, the collection of taxes, [and] the accrual of penalties" (Nassau County Charter § 2201 [L 1936, ch 879, § 2201]; *see* Nassau County Charter § 103 [6] [L 1936, ch 879, § 103 (6)]). As will be explained (*see infra* part III), section 151 of the Charter forms the crux of the County's appellate argument in the instant case. That section, entitled "Effect of local law on acts of State Legislature," stated that, "[i]n adopting a local law changing or superseding any provision of an act of the State Legislature which provision does not in terms and in effect apply alike to all counties" (Nassau County Charter § 151 [L 1937, ch 618, § 2]), otherwise known as a "[s]pecial law" of the State (NY Const, art IX, § 3 [d] [4]), "the County Legislature shall specify the chapter number, year of enactment, title of statute, section, subsection or subdivision, which it is intended to change or supersede, but the failure so to specify shall not affect the validity of such local law" (Nassau County Charter § 151 [L 1937, ch 618, § 2]).

In addition, at the time of the Charter's adoption, the County's Board of Assessors conducted real property tax assessments and maintained the tax rolls (*see generally* Nassau County Charter §§ 601-607 [L 1936, ch 879, §§ 601-607]). The

County Board of Supervisors would pay any real property tax refunds resulting from assessment errors to the taxpayers and then deduct the refunded amounts from the budgets of the taxing districts wherein the particular taxpayers resided (*see* Nassau County Charter § 122 [L 1936, ch 673, § 11]).

## B

In 1948, the County Board of Supervisors sent a home rule message to the state legislature, requesting that the Administrative Code be amended to obligate the County, rather than the taxing districts, to pay any refunds resulting from the County's erroneous assessment of real property taxes. In response, the legislature enacted chapter 851 of the Laws of 1948, which amended the County's Administrative Code to provide as follows:

> "Notwithstanding any provisions of this chapter, or any other general or special law to the contrary, any deficiency existing or hereafter arising from a decrease in an assessment or tax . . . or by reason of exemptions or reductions of assessments shall be a county charge." (Nassau County Administrative Code § 6-26.0 [b] [3] [c] [L 1948, ch 851, § 2]).

The amendment also stated that, in a proceeding to review such tax assessments or refunds (also called a tax certiorari proceeding), the party challenging the assessment had to serve any papers in connection with such a proceeding on the County's Board of Assessors and *not* on "the clerk of any school district" (Nassau County Administrative Code § 6-17.3 [L 1948, ch 851, § 3]). The newly amended section of the Administrative Code was commonly called the "County Guaranty."

That same year, the legislature amended the Nassau County Charter to set forth a new procedure for tax extension, whereby the County's assessors would project the taxes to be paid on a given property for the coming year (*see* Nassau County Charter § 607 [L 1948, ch 98, § 1]). The amended Charter also stated that "[a]ny surplus existing or hereafter arising from the extension of taxes in excess of amounts raised for the adopted budgets shall be credited to the county, and any deficiencies existing or hereafter arising from the extension of taxes for the adopted budgets shall be a county charge" (*id.*).

Explaining the purpose of the County Guaranty and the related amendments to the Charter, the County Attorney wrote to the Governor's counsel that, in light of the fact that it was the county government

"whose members [we]re charged with the duty of preparing the assessment roles and extending the taxes, it [wa]s deemed to be in the best interests of the County of Nassau that section 607 of the Nassau County Government Law be amended to provide that any surplus existing or [t]hereafter arising from taxes in excess of the amounts raised for the adopted budgets shall be credited to the county, and any deficiencies existing or [t]hereafter arising from the extension of taxes for the adopted budgets shall be a county charge." (Letter from County Attorney, Feb. 25, 1948 at 2, Bill Jacket, L 1948, ch 98).

The County Attorney reiterated this point in a second letter to the Governor's counsel (*see* Letter from County Attorney, Mar. 8, 1948 at 2, Bill Jacket, L 1948, ch 851). The legislation's sponsor in the State Assembly wrote to the Governor's counsel to express a similar intent to make the County responsible for the relevant refunds because the County had made the assessment errors which the refunds were meant to correct (*see* Assembly Sponsor's Mem, Bill Jacket, L 1948, ch 851 at 7-10; *see also Matter of Steel Los III/Goya Foods, Inc. v Board of Assessors of County of Nassau*, 10 NY3d 445, 453-454 [2008] [summarizing legislative intent behind the Guaranty]).

After the passage of the County Guaranty, the legislature enacted the Real Property Tax Law, which remains in effect today and requires that, in counties other than Nassau County, real property tax refunds be charged to the individual taxing districts within each county (*see* RPTL 726 [1]). Regarding Nassau County, however, the RPTL leaves the County Guaranty and its tax certiorari notice provisions intact (*see* RPTL 712 [2-a]). Thus, under state law from 1948 until the present, Nassau County must pay all real property tax refunds owed by the taxing districts within the County, whereas virtually every other county may shift that obligation onto the relevant taxing districts.

## C

In 1963, the legislature and New York voters amended the Constitution's home rule provisions, upon which the County relies heavily in this case. In particular, article IX, § 2 of the Constitution provides that, subject to any other applicable provisions of the Constitution, the legislature "[s]hall enact, and may from time to time amend, a statute of local governments

granting to local governments powers including but not limited to those of local legislation and administration in addition to the powers vested in them by this article" (NY Const, art IX, § 2 [b] [1]).

Article IX, § 2 further states:

> "In addition to powers granted in the statute of local governments or any other law, (i) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government and, (ii) every local government *shall have power to adopt and amend local laws* not inconsistent with the provisions of this constitution or any general law *relating to the following subjects*, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government: . . .

> "The levy, collection and administration of local taxes authorized by the legislature and of assessments for local improvements, *consistent with laws enacted by the legislature.*" (NY Const, art IX, § 2 [c] and [c] [ii] [8] [emphasis added].)

Article IX, § 3 declares, among other things, that "[t]he provisions of this article shall not affect any existing valid provisions of acts of the legislature or of local legislation and such provisions shall continue in force until repealed, amended, modified or superseded in accordance with the provisions of this constitution" (NY Const, art IX, § 3 [b]).

Additionally, in 1963, the state legislature amended the Municipal Home Rule Law. As so amended, that statutory scheme now declares that, "[i]n addition to powers granted in the constitution, the statute of local governments or in any other law," every local government "shall have [the] power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law, relating to the following subjects," including "[t]he collection of local taxes authorized by the legislature and of assessments for local improvements, which in the case of county, town or village local

laws shall be consistent with laws enacted by the legislature" (Municipal Home Rule Law § 10 [1] [ii] [a] [9]). The Municipal Home Rule Law also permits counties to amend their charters in a manner consistent with applicable state laws and the Constitution (see Municipal Home Rule Law § 33), contains a savings clause retaining the counties' existing powers under previously enacted statutes (see Municipal Home Rule Law § 35), and continues all existing laws, local laws and charters not expressly repealed (see Municipal Home Rule Law § 56).

At the same time, the Municipal Home Rule Law specifically declares that, "[e]xcept in accordance with provisions of this chapter or with other laws enacted by the legislature, a county charter or charter law shall not supersede any general or special law enacted by the legislature . . . [w]hich relates to the imposition, judicial review or distribution of the proceeds of taxes or benefit assessments" (Municipal Home Rule Law § 34 [3] [a]). The Municipal Home Rule Law defines a "charter law" as "[a] local law providing, amending or repealing a county charter, or transferring a function or a duty pursuant to section thirty-three-a of this chapter" (Municipal Home Rule Law § 32 [2]).

Of course, just as it did at the time of the 1963 amendments to the Constitution and the Municipal Home Rule Law, the Constitution currently contains a taxation article, which is essential to one of plaintiffs' arguments before this Court. Article XVI of the Constitution provides that "[t]he power of taxation shall never be surrendered, suspended or contracted away, except as to securities issued for public purposes pursuant to law," and that "[a]ny laws which delegate the taxing power shall specify the types of taxes which may be imposed thereunder and provide for their review" (NY Const, art XVI, § 1). Under that article, "[t]he legislature shall provide for the supervision, review and equalization of assessments for purposes of taxation" (NY Const, art XVI, § 2).

## D

In recent years, Nassau County's finances seriously declined. In 2002, the County Comptroller announced that the County had more than $2.8 billion in debt; the Comptroller blamed the debt burden in part on the unusually large number of tax certiorari proceedings in the county and in part on the County Guaranty (see Howard S. Weitzman, *Nassau County Must Stop Paying School Tax Refunds* [May 30, 2012], available at http://

www.nassaucountyny.gov/agencies/comptroller/Letters/5-30-02.html [last visited Jan. 21, 2014]). As this financial decline continued, in 2010, the county legislature enacted Local Law 18, which it called the Common Sense Act.[1] Local Law 18 purportedly amends the County's Administrative Code by repealing the County Guaranty, deletes the section of the County Charter which requires the County to pay deficiencies arising from the extension process, and amends section 6-24.0 of the Administrative Code to state, "The County shall act in accordance with the provisions of the Real Property Tax Law with respect to the correction of assessment rolls and tax rolls" (Local Law No. 18-2010 of the County of Nassau § 3, available at https://www.nassaucountyny.gov/agencies/legis/documents/locallaw18-10.pdf [last visited Jan. 21, 2014]). Local Law 18 specifies that, 10 days after a tax petitioner has served the County with a petition and notice for tax review, the petitioner must also mail a copy of those papers to the superintendent of any school district wherein the petitioner's property lies (*see id.* § 4). In sum and substance, Local Law 18 purportedly repeals the County Guaranty and allows the County to charge real property tax refunds back to the taxing districts.

## II

After the passage of Local Law 18, various interested parties filed two hybrid CPLR article 78 proceedings/declaratory judgment actions and one declaratory judgment action in Supreme Court, Nassau County, challenging the validity of that local law. In the first action, numerous school districts and officials sued the County. In the second action, two taxpayers sued the County, its legislature and its executive. In the third action, various towns and special districts sued the County. In all actions, plaintiffs essentially sought a declaration that Local Law 18 was null, void and unenforceable because it violated, among other things, the Municipal Home Rule Law provisions limiting the powers of local government and the Constitution's home rule and taxation articles. The County moved to dismiss the taxpay-

---

1. According to an affidavit submitted by one of the plaintiffs in this litigation, the County attempted to prepare a home rule message asking the state legislature to repeal the Guaranty (*see* affidavit of Lorraine Deller ¶¶ 6-11). However, the record does not show that Nassau County has ever formally submitted to the legislature a home rule message seeking the repeal of the County Guaranty.

ers' suit for lack of standing and answered the remaining complaints. The cases were consolidated for discovery and decision.

Supreme Court denied the petitions and effectively granted summary judgment to the County in all three actions (*see Matter of Baldwin Union Free Sch. Dist. v County of Nassau*, 2012 NY Slip Op 30079[U], *1-7 [Sup Ct, Nassau County 2012]). In light of its disposition of the case, the court denied as academic the County's motion to dismiss the taxpayer plaintiffs' suit for lack of standing (*see id.* at *7). Plaintiffs appealed.

In an opinion by Justice Lott, the Appellate Division, Second Department unanimously reversed Supreme Court's order, granted plaintiffs' summary judgment motions and entered a declaratory judgment that Local Law 18 violated the Constitution and the Municipal Home Rule Law (*see Matter of Baldwin Union Free Sch. Dist. v County of Nassau*, 105 AD3d 113, 114-120 [2d Dept 2013]). In particular, the Appellate Division found that article IX, § 2 (c) of the Constitution prohibited Nassau County from enacting local tax laws, such as Local Law 18, that were inconsistent with general or special state laws because that constitutional provision required local tax legislation to be "*consistent with laws enacted by the legislature*" (*id.* at 118, quoting NY Const, art IX, § 2 [c] [ii] [8]). The court further determined that, because Municipal Home Rule Law § 34 precluded the establishment of any charter law which superseded a special or general state law " 'relat[ing] to the imposition, judicial review or distribution of the proceeds of taxes or benefit assessments,' " the County could not supersede the County Guaranty's distribution of tax refund charges by using Local Law 18 to charge tax over-assessments back to the taxing districts (*id.* at 118-119, quoting Municipal Home Rule Law § 34 [3] [a]).

Additionally, in the court's view, the County Charter did not authorize the County to enact Local Law 18 and repeal the County Guaranty because the County Charter granted the County only those taxation powers permitted under the home rule article of the Constitution, which banned local tax laws that were inconsistent with special state laws (*see id.* at 119). Thus, given the lack of authority for Local Law 18 in the County Charter, the Constitution's and the Municipal Home Rule Law's savings clauses did not preserve the County's nonexistent power to make charter laws altering the distribution of tax proceeds

and assessments (*see id.*). The County appeals to this Court as of right pursuant to CPLR 5601 (b) (1), and we now affirm.[2]

## III

### A

As limited by the State and Federal Constitutions' protection of individual rights and restriction of state power, the State Constitution establishes the state government as the preeminent sovereign of New York, and the three coordinate branches of the state government may exercise the entire legislative, executive and judicial power of the State, as entrusted to them by the people (*see* NY Const, art III, § 1; art IV, § 1; art VI; *see generally Jancyn Mfg. Corp. v County of Suffolk*, 71 NY2d 91, 97 [1987]; *People v De Jesus*, 54 NY2d 465, 468 [1981]; *Matter of City of New York*, 217 NY 45, 52-53 [1916]; *People v Morris*, 13 Wend 325, 337 [1835]). Given that the authority of political subdivisions flows from the state government and is, in a sense, an exception to the state government's otherwise plenary power, the lawmaking power of a county or other political subdivision "can be exercised only to the extent it has been delegated by the State" (*Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 376 [1989]; *see Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395, 399-401 [2003]).

Furthermore, because the Constitution expressly imbues the state government, rather than any locality, with "[t]he power of taxation" (NY Const, art XVI, § 1), state law governs the tax field unless the state legislature or the Constitution unambiguously delegates certain taxation authority to a political subdivision (*see* NY Const, art XVI, § 1; *Expedia, Inc. v City of N.Y. Dept. of Fin.*, 22 NY3d 121, 130 [2013, Pigott, J., dissenting]; *Matter of Board of Educ. of City School Dist. of City of N.Y. v City of New York*, 41 NY2d 535, 542 [1977]; *Sonmax, Inc. v City*

---

**2.** The Appellate Division did not address the standing issue raised by the County in Supreme Court, and before this Court, the County does not renew its claim that the taxpayer plaintiffs lack standing to bring a lawsuit challenging the validity of Local Law 18. In any event, it is beyond dispute that the municipal and official plaintiffs in the two other actions have standing to bring those suits, and thus we may properly rule on the validity of Local Law 18 in those actions without regard to the question of standing in the taxpayer plaintiffs' case. Under these circumstances, we decline to express any opinion on the standing issue or set forth any particular precedential ruling with respect to standing.

*of New York*, 43 NY2d 253, 257 [1977]; *People v County of West-chester*, 282 NY 224, 232 [1940]; *County Sec. v Seacord*, 278 NY 34, 37 [1938]). Indeed, "[t]he power of taxation, being a State function, the delegation of any part of that power to a subdivision of the State must be made in express terms," and the delegation of any form of taxation authority "cannot be inferred" (*County Sec.*, 278 NY at 37). So, too, " '[t]he authority of a municipality to abrogate State law is never implied or inferred,' " but rather arises only from an " 'express grant, never from a general grant of power' " by the State (*County of Westchester*, 282 NY at 232, quoting *Jewish Consumptives' Relief Socy. v Town of Woodbury*, 230 App Div 228, 234 [2d Dept 1930]); *see Matter of Kress & Co. v Department of Health*, 283 NY 55, 60 [1940]).

Perhaps the most significant delegation of state legislative authority is embodied in article IX of the Constitution, the home rule article (*see* NY Const art IX). Article IX "empower[s] municipalities to legislate in a wide range of matters relating to local concern," and generally, "[s]o long as local legislation is not inconsistent with the State Constitution or any general law, localities may adopt local laws both with respect to their property, affairs or government, and with respect to other enumerated subjects, except to the extent that the legislature shall restrict the adoption of such a local law" (*Albany Area Bldrs. Assn.*, 74 NY2d at 376 [internal quotation marks and citations omitted]; *see New York State Club Assn. v City of New York*, 69 NY2d 211, 217 [1987]). As previously noted, article IX permits localities to make laws with respect to "[t]he levy, collection and administration of local taxes authorized by the legislature and of assessments for local improvements," but such local laws must be "consistent with laws enacted by the legislature" (NY Const, art IX, § 2 [c] [ii] [8]; *see Sonmax, Inc.*, 43 NY2d at 257).

Under its Charter, Nassau County derives its ability to pass local legislation solely from article IX of the Constitution, and therefore the County cannot legislate in a manner inconsistent with the provisions of that article (*see* Nassau County Charter § 150 [1]). Although, within constitutional bounds, the Charter allows Nassau County to pass a tax plan by local ordinance and to provide for the administration of local real property taxes (*see* L 1936, ch 879; *see also 41 Kew Gardens Rd. Assoc. v Ty-burski*, 70 NY2d 325, 332 [1987]), the Municipal Home Rule Law proscribes the enactment of local charter legislation that "supersede[s] any general or special law enacted by the

legislature . . . [w]hich relates to the imposition, judicial review or distribution of the proceeds of taxes or benefit assessments" (Municipal Home Rule Law § 34 [3] [a]). Even in the face of these restrictions, though, the County's laws, like the duly enacted laws of any legitimate legislative body, carry a strong presumption of constitutionality (*see 41 Kew Gardens Rd. Assoc.*, 70 NY2d at 333; *see generally Brightonian Nursing Home v Daines*, 21 NY3d 570, 575-577 [2013]).

For the reasons set forth below, we conclude that article IX of the Constitution and the Municipal Home Rule Law prohibited the County from passing Local Law 18. We therefore invalidate Local Law 18 without reaching plaintiffs' remaining contentions.

## B

To decide whether Nassau County acted within its authority in passing Local Law 18, we must first evaluate that enactment's essential characteristics to determine its place within the constitutional framework described above.

The County does not dispute that, by enacting Local Law 18, it exercised the "power of taxation" within the meaning of article XVI of the Constitution. Thus, the County necessarily concedes that only a clearly expressed, rather than implied, grant of relevant legislative power could have authorized the passage of Local Law 18 and the repeal of the County Guaranty (*see Castle Oil Corp. v City of New York*, 89 NY2d 334, 339 [1996]; *County Sec.*, 278 NY at 37).

The County is right to acknowledge Local Law 18's place within the realm of article XVI's taxing power. The constitutional power of taxation extends not just to the collection of taxes or the setting of tax rates, but also to the administration of the tax system and the direct allocation of tax burdens and benefits (*see Castle Oil Corp.*, 89 NY2d at 338-340 [finding a law prohibiting the deduction of a petroleum tax from income tax liabilities to be an exercise of the constitutional power of taxation]; *Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293, 306-309 [1961] [same with respect to any agreement to either provide state tax credit as an offset against a race track company's federal income taxes or hold only a certain amount of tax revenue in a special account for the benefit of the company]; *see also Matter of PNL Stillwater, LLC v Board of Assessors of Town of Stillwater*, 94 AD3d 1401, 1401-1403 [3d Dept 2012] [same for procedures for the assessment of taxes

and agreements to limit tax liability]). By requiring the taxing districts within Nassau County to pay real property tax refunds to the taxpayers, relieving the county government of that tax refund burden and specifying that the taxing districts shall be served with notice of tax certiorari proceedings, Local Law 18 directly alters the assignment of tax burdens and the administration of the tax system with respect to tax review proceedings. Thus, Local Law 18 is an exercise of the "power of taxation" which cannot stand unless the State has expressly delegated to the County the power to pass such a local tax law.

Local Law 18 also purports to supersede a special state law, the County Guaranty, and for that reason as well, Local Law 18 could be passed only pursuant to an express and unambiguous delegation of authority by the state legislature (*see County of Westchester*, 282 NY at 232; *Kress & Co.*, 283 NY at 60; *see also Matter of Niagara Mohawk Power Corp. v City of Fulton*, 8 AD2d 523, 527 [4th Dept 1959]). In passing Local Law 18, the county legislature stated its intent to repeal the County Guaranty passed by the state legislature (*see* Local Law No. 18-2010 of the County of Nassau § 1), and Local Law 18 cites the specific Administrative Code provisions containing the County Guaranty and declares that they "are hereby repealed" (Local Law No. 18-2010 of the County of Nassau § 2). There can be no question, then, that Local Law 18 is a local tax law meant to supersede a special state tax law, and thus the County had no right to create Local Law 18 unless it had been empowered by the legislature to supersede special state tax laws (*see Castle Oil Corp.*, 89 NY2d at 339; *County of Westchester*, 282 NY at 232).

Additionally, Local Law 18 is a charter law subject to the restrictions of Municipal Home Rule Law § 34 (3) (a). As we have previously observed, a law that amends the charter-related administrative code of a county is a "charter law" within the meaning of the Municipal Home Rule Law (*see Matter of Gallagher v Regan*, 42 NY2d 230, 233-235 [1977] [stating that public offices created by a county's charter and by its administrative code were established pursuant to charter laws and therefore could not be abolished by a legislative act of lesser import]; *see also* Municipal Home Rule Law § 32 [2]). In light of Local Law 18's attempted alteration of the County Administrative Code sections that collectively constitute the County Guaranty—a state enactment that had previously amended the County Charter—Local Law 18 is plainly a charter law within the scope of Municipal Home Rule Law § 34 (3) (a).

In short, Local Law 18 is a tax-related local charter law that purports to supersede a special state tax law. Accordingly, Local Law 18 may be sustained only to the extent that the legislature specifically authorized the County to enact local legislation with those characteristics.

## C

The state legislature has not delegated to the County the prerogative to supersede a special state tax law, and this lack of authority is fatal to Local Law 18.

First, the County Charter, as established by the legislature, does not vest in the County the right to repeal a special state tax law. The primary County Charter provision relating to supersession, section 151, simply provides that, "[i]n adopting a local law changing or superseding any provision of an act of the State Legislature which provision does not in terms and in effect apply alike to all counties," the County must specify the exact portions of the state law being superseded (County Charter § 151). Section 151 thus describes the procedure the County shall follow "[i]n adopting" a local law superseding a special state law, but it does not state that the County "shall have the power to adopt" local laws which repeal special state laws, "may adopt" such legislation, or anything to that effect. Accordingly, County Charter § 151 does not expressly confer upon the County any substantive authority to enact local laws which supersede special state tax laws.

In relying on County Charter § 151's plain terms to interpret it as a procedural provision without any accompanying substantive authority, we do not mean to suggest that section 151 has no practical effect or import. County Charter § 151 still plays a vital role in the Charter's scheme because it sets forth procedures which, in the event the legislature actually decides to endow the County with certain supersession powers, serve to adequately notify the County's citizens and the state government of the claimed applicability of the local law and its apparent conflict with state law.

County Charter § 154 does not supply the necessary legislative rights so clearly absent from section 151. In that regard, County Charter § 154, denominated "Restriction on county legislation," expressly prohibits the County from superseding state laws which raise the County's debt limit, raise its annual tax revenues, or affect various fiscal, labor or regulatory matters (*see* Nassau County Charter § 154 [1]-[8] [L 1937, ch 618,

§ 2]). Section 154 does not specify that the County may supersede special state tax laws simply because that section prevents the County from superseding special state laws covering certain matters unrelated to taxation. One cannot infer from section 154's limitations that the Charter silently grants the County any and all supersession powers that are not specifically prohibited by section 154 (*see Kress & Co.*, 283 NY at 60; *County Sec.*, 278 NY at 37). Accordingly, because nothing in sections 151 and 154 expressly delegates to the County the right to supersede special state tax laws, the County had no authority to enact Local Law 18, which purports to supplant a special state tax law.

To be sure, County Charter § 150 (1) grants the County powers of local legislation "under the provisions of" article IX of the State Constitution. However, that article, upon which County Charter § 150 (1) depends, does not confer upon the County the ability to create local tax laws that supersede special state laws. Indeed, the Constitution actually forbids the County to pass any local tax law of that kind. Although article IX, § 2 declares that every local government shall have the power to pass local laws "relating to" the "levy, collection and administration of local taxes," those local laws must be *"consistent with laws enacted by the legislature"* (*see* NY Const, art IX, § 2 [c] [ii] [8] [emphasis added]). By requiring that any local tax-related legislation be consistent with all "laws enacted by the legislature," without distinguishing between general and special state laws, the relevant constitutional section plainly prohibits the County from passing local tax laws which conflict with special and/or general state laws. And, while the Constitution contains a savings clause that preserves any preexisting powers of local legislation granted by an act of the legislature (NY Const, art IX, § 3 [b]), as already mentioned, the County has no preexisting power to pass local laws that supersede special state tax laws. Therefore, the Constitution bars the County from exercising its powers of local legislation to supersede the County Guaranty.

In addition to the absence of constitutional or statutory authority allowing the County to enact Local Law 18, the Municipal Home Rule Law affirmatively prohibited the County from doing so. As discussed, Local Law 18 is a charter law, and Municipal Home Rule Law § 34 (3) (a) specifies that such a law "shall not supersede" any "special law" of the State "relat[ing]

to" the "judicial review or distribution" of tax proceeds or benefit assessments. Because the County Guaranty is a special state law which "relates to" the "distribution" of tax proceeds and benefits, the County could not enact Local Law 18 to supersede it.

## D

Resisting the constitutional and statutory limits on its legislative powers, the County offers a host of arguments, but none of them are persuasive. For example, the County maintains that, because the County Charter originally conferred upon the County the right of home rule under article IX, § 2 of the 1938 Constitution, the County's charter powers are not subject to the restrictions contained in the amended version of article IX passed in 1963. This assertion is perplexing, to say the least.

After all, amendments to the State Constitution do not preserve all preexisting provisions of the amended portion of the Constitution, thereby forever maintaining all prior delegations of state authority that are curtailed by the amendments themselves. Instead, the very purpose and effect of an amendment is to amend the relevant portion of the Constitution, effectively repealing and voiding any prior version of the particular section so amended (*see Browne v City of New York*, 213 App Div 206, 220 [1st Dept 1925], *affd* 241 NY 96 [1925] ["By that action of the electorate, article 12" of the Constitution, "as so amended, superseded article 12 as it existed at the time when these concurrent resolutions were acted upon by the Legislature, and . . . section 2 of article 12 as theretofore existing ceased to exist and the amended article took its place"]; *see also People ex rel. Carter v Rice*, 135 NY 473, 496-497 [1892] [stating that, where a new amendment to the Constitution is inconsistent with preexisting constitutional provisions or adopts a public policy that is clearly contrary to those prior provisions, "it is not too much to hold that in such a case the alterations and amendments which have been actually made in the course of the attempt to effect the change of policy, do in effect and by implication strike out and abrogate a provision which, by reason of the amendments, has no longer any excuse for existence"]; *Popfinger v Yutte*, 102 NY 38, 42 [1886] [concluding that an amendment to an article of the Constitution superseded the previous version of that article, such that the legislature no longer had the power to limit the jurisdiction of certain courts which it had enjoyed under the previous incarnation of that article]).

Applying that principle here, the County cannot continue to derive its home rule powers from the 1938 version of article IX, which was superseded by the 1963 amendments and therefore no longer exists. Nothing in the 1963 amendments preserved the 1938 constitutional home rule provisions, which did not include the requirement that local tax-related laws be consistent with state laws; the 1963 amendments preserved only preexisting *statutory* home rule powers (*see* NY Const, art IX, § 3 [b]). Consequently, at present, the County may exercise powers of local legislation only if it complies with the 1963 amendments' requirement that local tax-related laws be consistent with state laws. To hold otherwise would leave the constitutional status of the State and the County in an intolerable limbo, governed by multiple Constitutions from different eras.

In any event, the legislature has evinced its intent to subject the County to the restrictions of the current form of article IX. After the adoption of article IX of the 1963 Constitution, the legislature continued to amend the Nassau County Charter (*see e.g.* L 1992, ch 717 [amending the Charter in relation to the imposition of an exigency tax and to allow the County to charge a recording tax on mortgages]), and the legislature declined the opportunity to remove the Charter's reference to article IX or alter the Charter to explicitly invoke the 1938 version of that article. In maintaining the Charter's reference to article IX subsequent to the 1963 amendments, the legislature evidently concluded that the current version of article IX should govern home rule in Nassau County. Accordingly, the current version of article IX, including its ban on local tax-related laws that conflict with special state laws, fully applies to the County and prohibits it from repealing the County Guaranty.

In the alternative, the County invites us to interpret the constitutional requirement that local tax laws be "consistent with laws enacted by the legislature" (NY Const, art IX, § 2 [c] [ii] [8]) to permit the County to pass local tax laws that are inconsistent with special state tax laws. Relying on the canon of statutory construction which holds that general language in a statute "is known by the company it keeps" (*People v Illardo*, 48 NY2d 408, 416 [1979]), the County argues that, because the sections of the Constitution surrounding the ban on legislation that is not consistent with "laws enacted by the legislature" (NY Const, art IX, § 2 [c] [ii] [8]) also prohibit local laws that are "inconsistent with . . . any *general* law" of the State (NY Const, art IX, § 2 [c] [emphasis added]), the seemingly broad

phrase "consistent with laws" should be narrowed by the company it keeps to mean "consistent with general laws." Therefore, in the County's view, Local Law 18 complies with the relevant limitations because it is consistent with general state tax laws.

However, beneath its surface-level appeal, the County's interpretation of article IX does not withstand close scrutiny. Tellingly, when the legislature defined the generic restrictions on conflicting local legislation using the term "general laws," it removed the qualifier "general" from the comparable specific prohibition against local tax laws that are not consistent with state "laws" (*compare* NY Const, art IX, § 2 [c] *with* NY Const, art IX, § 2 [c] [ii] [8]). There is no reason to suppose, as the County apparently does, that the legislature casually excised the modifier "general" from the prohibition against local tax laws which are not consistent with state "laws," and then somehow assumed that the word "general" would be read back into that restriction based on prior references to "general" laws in other related constitutional provisions. Rather, the legislature must have consciously omitted the term "general" from the prohibition against local tax laws that are not consistent with "laws enacted by the legislature," thereby revealing an intent to broadly ban any local tax law that conflicts with a state law, whether general or special (*see Matter of Albano v Kirby*, 36 NY2d 526, 530 [1975] ["When different terms are used in various parts of a statute or rule, it is reasonable to assume that a distinction between them is intended"]). Moreover, given the overarching constitutional principle that the power of taxation lies with the State, any ambiguity in the constitutional restrictions on local legislation should be construed in favor of limiting local supersession of state tax laws.

The County asserts that *Sonmax, Inc. v City of New York* (43 NY2d 253 [1977]) governs the constitutional aspects of this case, but that is not so. In *Sonmax, Inc.*, the State had passed a statute which allowed certain cities to choose to adopt special in rem tax foreclosure procedures, and the State had also enacted a series of special laws governing such foreclosures in New York City (*see id.* at 255-256). Eventually, the City passed its own local in rem tax foreclosure law, and certain tax petitioners challenged the local law (*see id.* at 255-257). Relying on the Municipal Home Rule Law provision that a local law must not be "inconsistent" with "any general law" of the State, the petitioners claimed that the City's local law ran afoul of the state statute providing for optional foreclosure procedures, which the petitioners deemed a general state law (*see id.* at 257-258). We

upheld the City's local tax law (*see id.* at 255-256, 258). First, we noted that, while article IX of the Constitution mandated that neither city nor county laws could be "inconsistent" with a "general law" passed by the legislature, article IX imposed the additional requirement that local tax laws be "consistent with laws enacted by the legislature" only on counties and *"not on cities"* (*id.* at 257 [emphasis added]). Evaluating the City's tax foreclosure law solely under the requirement that city laws not be inconsistent with general state laws, we concluded that, even assuming the relevant state statute was a general state law, the City's law was not inconsistent with the state legislation because that state statute clearly permitted cities to choose unique local tax foreclosure procedures (*see id.* at 257-258).

Thus, *Sonmax, Inc.* merely stands for the proposition that, where a city law is not actually inconsistent with a *general* state law, the city law does not violate the Constitution's "not inconsistent with general state laws" rule. By contrast, the instant case involves a conflict between a local law and a *special* state law, as well as the Constitution's requirement that local tax laws be "consistent with laws" passed by the legislature, neither of which was at issue in *Sonmax, Inc.* Here, the "consistent with laws" rule applies to the County, and Local Law 18 violates that requirement because that local law is not, in fact, consistent with the County Guaranty enacted by the legislature.

## IV

The County possesses substantial home rule powers, but the prerogative to impinge freely upon the State's constitutional power of taxation, by means of superseding a special state tax law, is not among them. Because Local Law 18 was designed to achieve that impermissible intrusion, it is hereby declared unconstitutional, invalid, unenforceable and void. With respect to any policy concerns, "appeal lies to the ballot and to the legislative processes of democratic government, not to the courts" (*Maresca v Cuomo*, 64 NY2d 242, 249 [1984]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and RIVERA concur.

Order affirmed, with costs.