# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 43
In the Matter of St. Lawrence
County et al.,
     Appellants,
    v.
City of Ogdensburg et al.,
     Respondents,
et al.,
     Respondents.

Alan J. Pierce, for appellants.
Nicholas S. Cortese, for respondents City of Ogdensburg et al.
New York State Association of Counties, amicus curiae.

CANNATARO, J.:

On this appeal, we are asked to determine whether Local Law No. 2-2021 of City of Ogdensburg (Local Law No. 2), which repealed a prior local law validly opting out of the application of Real Property Tax Law (RPTL) article 11 (*see* RPTL 1104 [2]), is inconsistent with RPTL 1150 or otherwise unconstitutional under the home rule article of the New York State Constitution (*see* NY Const art IX). Because petitioners have not

- 1 -

demonstrated that Local Law No. 2 is either inconsistent with section 1150 or unconstitutional, we affirm.

I.

Real Property Tax Law article 11 outlines a process for the enforcement and collection of delinquent real property taxes at the local level (*see* RPTL 1100 et. seq.). The provisions of RPTL article 11 generally apply to all counties and cities and "supersede any inconsistent general, special or local law" (RPTL 1104 [1]). However, a city that was enforcing the collection of delinquent taxes pursuant to its charter prior to 1993 could opt out by adoption, no later than July 1, 1994, of a local law "providing that the collection of taxes in such . . . city . . . shall continue to be enforced pursuant to such charter, code or special law, as such charter, code or special law may from time to time be amended" (RPTL 1104 [2]). If a city opted out, RPTL 1106 (1) allows it to opt back in by repealing the local law without referendum. "Upon such repeal, the provisions of [RPTL article 11] shall be applicable to the enforcement by such . . . city . . . of all taxes which shall have become liens on or after the date on which such repeal shall have become effective" (RPTL 1106 [1]).

Respondent City of Ogdensburg timely opted out of RPTL article 11 (*see* Local Law No. 3-1994 of City of Ogdensburg), and subsequently collected delinquent taxes on behalf of itself, petitioner St. Lawrence County, and the Ogdensburg City School District. Pursuant to RPTL 1106, the City sought to opt back into article 11 by the enactment of Local Law No. 2, which effectively repealed the 1994 Local Law opting out by amending the City Charter to "relinquish the City's tax foreclosure responsibility with the intent of

all foreclosure responsibility defaulting to" the County. Local Law No. 2 also provided that "the County shall be responsible for the enforcement of delinquent City taxes in accordance with [RPTL article 11]" and that "[t]he County Treasurer shall, if satisfied that" the City's account of unpaid taxes "is correct, credit the City with the amount of such unpaid delinquent taxes." The County alleges that the annual amount of the warrant, including delinquent School District taxes, is approximately $1.6 million.

Shortly after the enactment of Local Law No. 2, the County commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking, among other things, a declaratory judgment that Local Law No. 2 was not in accord with state law and "impairs the rights of the County of St. Lawrence and the County Treasurer." Although the County did not dispute that the City may relieve itself of the obligation to collect delinquent County taxes, the County alleged that Local Law No. 2 unlawfully shifted the burden of enforcing and collecting delinquent City and School District taxes from the City to the County in a manner that both was inconsistent with RPTL article 11 and impaired the power of the County to regulate its own property and affairs in violation of article IX (§ 2 [d]) of the New York Constitution and Municipal Home Rule Law § 10 (5). In answering the City's motion to dismiss for failure to state a cause of action, the County argued that, absent a specific state statute providing for such an arrangement, a tax district

may assume the responsibilities of real property tax collection and enforcement for another only through an agreement between the districts under RPTL 1150.[1]

Supreme Court denied the petition as against the City and declared Local Law No. 2 §§ 2, 3 and 6 "to be valid and enforceable," holding that the local law did not impair, but increased the County's tax enforcement powers with respect to delinquent City taxes. The court further concluded that RPTL 1102 (6) (b) implicitly sanctions a city charter that calls for enforcement of delinquent taxes by a county and, thus, Local Law No. 2 did not conflict with the RPTL. The Appellate Division affirmed, with two Justices dissenting on the grounds that Local Law No. 2 is inconsistent with RPTL 1150 and impairs the powers of the County (208 AD3d 929 [3d Dept 2022]).[2]

II.

Article IX of the New York Constitution, the home rule article, "'empower[s] municipalities to legislate in a wide range of matters relating to local concern'" (*Matter of Baldwin Union Free Sch. Dist. v County of Nassau*, 22 NY3d 606, 620 [2014], quoting *Albany Area Bldrs. Assn. v Town of Guilderland*, 74 NY2d 372, 376 [1989]). "'[S]o long as local legislation is not inconsistent with the State Constitution or any general law,'"

---

[1] The County did not preserve any claim that, in repealing Local Law No. 3-1994 of City of Ogdensburg, the City failed to comply with the specific procedures expressly set forth in RPTL 1106—as opposed to RPTL 1150—and we do not address the potential merits of any such claim under section 1106.

[2] While the appeal was pending, the City passed a clarifying amendment to the City Charter that expressly affirmed the City's obligation to enforce delinquent taxes on behalf of the school district, rendering a cross claim asserted by the School District moot (208 AD3d 929, 930 n [2022]). No issues regarding the collection or enforcement of the School District's taxes are before us on this appeal.

article IX authorizes "localities [to] adopt local laws both with respect to their property, affairs or government, and with respect to other enumerated subjects, except to the extent that the legislature shall restrict the adoption of such a local law'" (*id.*, quoting *Albany Area Bldrs.*, 74 NY2d at 376; *see* NY Const, art IX, § 2 [c] [i]).  Notwithstanding that authorization, article IX further mandates that "a local government shall not have power to adopt local laws which impair the powers of any other local government" (NY Const, art IX, § 2 [d]; *see* Municipal Home Rule Law § 10 [5] ["a local government shall not have the power to adopt local laws which impair the powers of any other public corporation"]).

Here, upon the repeal of its 1994 opt-out law, the City became subject to RPTL article 11 with respect to its enforcement of "all taxes which shall have become liens on or after the date on which such repeal shall have become effective" (RPTL 1106 [1]).  RPTL 1102 (6) (b) provides that a city is a tax district unless it is a city "for which the county enforces delinquent taxes pursuant to the city charter."  Unlike other subsections of that provision, RPTL 1102 (6) (b) does not lay out a special procedure by which a city would make a county the responsible tax district (*cf.* RPTL 1102 [6] [c] [incorporating by reference RPTL 1442 for villages])—it simply references the city charter, supporting the inference that there is no special procedure.

In general, a city may revise and amend its charter by local laws that are not inconsistent with the constitution or general law  (*see* Municipal Home Rule Law §§ 10 [1] [ii] [c] [1]).  By repealing Local Law No. 2 and providing for the County to enforce the City's delinquent taxes in its charter, the City ceased to be a tax district with respect to future liens, absolving itself of the ability and responsibility to appoint an enforcing officer

and enforce the tax law (*see* RPTL 1102 [3]; RPTL 1160 [1]).[3] Instead, under RPTL 1102 (6) (b), the County is responsible—going forward—for tax enforcement and the benefits or burdens attendant thereto.

The County responds that the City's amendment of its charter via the enactment of Local Law No. 2 circumvented a purported mandate that it negotiate an agreement with the County regarding tax enforcement processes under RPTL 1150 and, thus, the local law is inconsistent with RPTL article 11. However, because section 1150 does not require that localities reach an agreement or follow a particular procedure, Local Law No. 2 is not inconsistent with that provision. Section 1150 (1) governs "[a]greements with other tax districts" and provides as relevant that "[a]ll tax districts are hereby *authorized* to make agreements with one another with respect to any parcel of real property upon which they respectively own tax liens in regard to the disposition of such liens (emphasis added)." Inasmuch as RPTL 1150 (1) merely permits such agreements and does not require them, section 1150 does not prevent the City from seeking simply to employ the RPTL article 11 procedures, without the benefit of an agreement.

The County further contends that Local Law No. 2 violated the mandates in the New York Constitution and Municipal Home Rule Law that "a local government shall not

---

[3] The City is correct that, under the plain terms of section 1102 (6) (b), the City was no longer a tax district with respect to enforcement of "taxes which shall have become liens on or after the date on which . . . repeal [of Local Law No. 3-1994 of City of Ogdensburg] shall have become effective" (RPTL 1106 [1]). However, the City was concededly a "tax district" prior to repeal of its 1994 opt-out law and it has not established that it did not retain that status with respect to pre-existing liens (*see* RPTL 1106 [2]).

have power to adopt local laws which impair the powers of" a local government (NY Const, art IX, § 2 [d]) or public corporation (Municipal Home Rule Law § 10 [5]). Specifically, the County argues that the Local Law essentially prevented it from entering into the type of agreements contemplated by RPTL 1150 and impaired its power by burdening it with the financial liability for the City's delinquent tax obligations. Both the City and County agree that Local Law No. 2 imposes a new obligation on the County for which it must now change the manner in which it allocates County funds. However, as noted, the legislature expressly permitted the City to repeal its local law, resulting in the County becoming responsible for the enforcement of taxes that become liens after the repeal is effective (*see* RPTL 1102 [6] [b]; 1106 [1]).

That the repeal of the opt-out law permitted by RPTL 1106 and charter amendment may impose additional obligations on the County is, as the Appellate Division put it, "neither an expansion nor impairment of the County's powers but simply a consequence of the statutory structure outlined in [the] RPTL" (208 AD3d at 932). Although the County may have the authority to enter into a RPTL 1150 (1) agreement, the County has not shown that the legislature has given it the power to *demand* that a City enter into such an agreement. Indeed, the supersession provision outlined in RPTL 1104 (1) demonstrates that the legislature delegated power here to the City and superseded any conflicting laws or interests of the County. Inasmuch as the County has no powers with respect to taxation that are not "unambiguously delegated" to it by the legislature or the Constitution (*Matter of Baldwin Union*, 22 NY3d at 619) and the legislature has chosen to limit a county's ability to enter into RPTL 1150 (1) agreements by making such agreement permissive rather than

mandatory, it cannot be said that the City impaired the County's power by doing as the legislature permits it to do under RPTL article 11. Therefore, we conclude that Local Law No. 2 does not violate the statutory and constitutional protections at issue, but effectuates a power the legislature granted to cities wishing to revoke their initial opt-out from article 11.

The County's remaining argument is academic.

Accordingly, the order of the Appellate Division insofar as appealed from should be affirmed, with costs.

Order insofar as appealed from affirmed, with costs. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas and Troutman concur. Judge Halligan took no part.

Decided May 23, 2023